JONES et al. v. CITY OF NEW YORK et al.

(Supreme Court, Trial Term, New York County.    June, 1900.)

1. CONTRACT—NOTICE TO BEGIN WORK.
   Plaintiffs entered into a contract with defendant for the construction of a school house; the work to be commenced on a day to be designated by the superintendent of school buildings, and completed within 300 days thereafter. *Held*, that a notice from the superintendent of buildings that there need be no further delay in the progress of the work was sufficient, though it did not name a specific day for the beginning of work.

2. SAME—FINDINGS OF ARBITRATOR—EFFECT.
   Where plaintiffs contracted to build a school house for defendant city, and agreed that defendant's superintendent of buildings should be the final arbiter of all questions arising relative to the execution of the contract, a finding of the latter that the work was not progressing in accordance with the terms of the contract, and that defendant was justified in taking possession of the unfinished work, is conclusive, and, in the absence of fraud, will not be disturbed.

3. SAME—BREACH—DAMAGES.
   Where plaintiffs contracted to build a school house for defendant city, but, through their breach, obliged defendant to take possession of the work in an unfinished condition, and enter into a new contract with another for its completion, defendants are entitled to recover from plaintiffs the excess of the new contract price over the price under plaintiffs' contract.

Action on contract by John W. Jones and others against the city of New York and the board of education. Judgment for defendants.

John Mulholland, for plaintiffs.

John Whalen, Chas. Blandy, and E. J. Freedman, for defendants.

McADAM, J. The plaintiffs entered into a contract with the board of education, December 28, 1898, by which they agreed to build a school house at the southeast corner of Hubert and Collister streets for $193,931. The work was to be commenced on a day to be designated by the superintendent of school buildings, and completed within 300 days thereafter. Sundays or holidays were excluded from the time allowed for completion. On January 26, 1899,

the superintendent of school buildings sent a letter to the plaintiffs, notifying them that the school board had just received notice that the contract had been approved by the comptroller on January 24, 1899, and that there need be no delay in the progress of the work. Although no specific day was designated when the work was to commence, the notice was sufficient to warn the contractors of the consequences of delay. As a matter of fact, the plaintiffs had commenced their work before the time they received the notice, which was January 28, 1899. To give them a more specific notice to commence would, under the circumstances, have been idle ceremony. The case in these respects differs from Dwyer v. City of New York (34 App. Div. 450, 55 N. Y. Supp. 930, and is not controlled by it. Clause 4a of the contract provides:

"That the parties of the second part [plaintiffs] will, upon the execution hereof, forthwith proceed with the said work, and every part and detail thereof, in a prompt and diligent manner, in order to complete and finish the same, and every part and appurtenance thereof, in a durable, workmanlike, and substantial manner, within the time above limited for that purpose, and without the performance of any part of the said work in weather deemed unsuitable therefor by the superintendent of school buildings, whose determination thereon shall be final and conclusive."

The meaning of this is that weather conditions were not to be considered as in any wise extending the 300 days allowed by the contract, unless the superintendent of school buildings deemed such weather unsuitable therefor. Bearing in mind these provisions, there will be found in the seventh paragraph of the answer the two main conditions of the contract upon which the determination of the action depends. They are as follows:

"Fourth. (b) That in case the parties of the second part [plaintiffs] shall at any time refuse or neglect to supply a sufficiency of workmen and materials of the proper skill and quality, or shall fail in any respect to prosecute the work required by this contract with promptness and diligence, or shall omit to fulfill any provision herein contained, this contract, after three days' notice, in writing, by the committee on buildings, or a majority thereof, to the parties of the second and third parts [plaintiffs and their sureties], served personally, or by leaving the same at their respective places of residence or business, shall be, and shall be held to be, voided and forfeited; and the party of the first part [board of education] shall have the right and power to procure and employ, by contract or otherwise, other persons to perform and furnish the work and materials required by this contract, so as fully to execute the same in every respect, and the cost and expense thereof, at the reasonable market rates, shall be a charge against the parties of the second and third parts, who shall pay to the party of the first part the excess thereof, if any, over and above the unpaid balance of the amount to be paid under this contract; and the parties of the second and third parts shall have no claim or demand to such unpaid balance, or by reason of the nonpayment thereof to them; and no scaffolding or fixed tackle of any kind belonging to or used by the parties of the second part shall be removed so long as the same may be wanted for the work. That in case the parties of the second part shall at any time, in the opinion of the superintendent of school buildings, neglect to faithfully carry out any portion of the work required by this contract, whereby safety and proper construction might be endangered, or which could not be subsequently rectified, or whereby damage and injury might result to life and property or either, then, and in every such case, the superintendent of school buildings shall have the right forthwith, and without notice to the parties of the second part, to enter into and upon the work, and to make good any and all imperfect work and material and deficiencies arising by reason of such

neglect. The expense and cost thereof shall be a charge against the parties of the second part, to be deducted from any payment or moneys which may be due or subsequently become due under this contract. And the opinion and decision of the superintendent of school buildings in all instances which may arise in the manner aforesaid shall be final, conclusive, and binding upon the parties of the second part. But no action so taken by the superintendent of school buildings shall release the parties of the second part from any and all consequences and damages which may have arisen, or may arise, owing to such neglect, whether willful or by omission; and said parties of the second part covenant and agree to hold the party of the first part harmless against and from any and all suits at law, and all and every damages and loss whatsoever arising therefrom."

"Twelfth. (b) To prevent all disputes and litigations, it is further agreed by and between the parties to this contract that the superintendent of school buildings shall in all cases determine the true construction of the plans and drawings or specifications hereinbefore mentioned, or any part thereof, and he shall in all cases decide every question which may arise relative to the execution of this contract, or the work and materials to be done and provided hereunder, on the part of the parties of the second part, and his decision shall be final and conclusive upon the said parties of the second part."

On May 29, 1899, the superintendent of school buildings called the attention of the school board to the fact that, although nearly five months of the time had expired, the plaintiffs' work had not progressed above the level of the cellar floors. The board thereupon adopted a resolution directing that a notice be served on the contractors that if, at the expiration of three days, they had not a sufficient number of workmen and proper material on the ground to prosecute their work according to the contract, the superintendent be directed to take possession of the work. The notice was served upon the plaintiffs, but was not complied with. After consultation with the corporation counsel, the school board concluded to give the contractors another opportunity of proceeding with the building with proper diligence, having reference to the portion of the 300 days yet unexpired. The contractors still being in default after this indulgence, the school board took possession of the work and entered into a new contract, in the manner required by law, with one James J. Looney, for $225,459; exceeding by $31,528 the contract price with the plaintiffs.

Without rehearsing the evidence given upon the different propositions, the court finds: (1) That the plaintiffs did not proceed with the work in a prompt and diligent manner; that they failed to supply a sufficiency of workmen and materials, and wholly neglected to do their work or perform their contract so that the same might be completed within the stipulated 300 days; and that such delays were substantial and not trivial. (2) That the board of education, for these reasons, and according to the terms of the contract, resumed possession of the work, and awarded a new contract therefor to James J. Looney for $225,459; being the lowest price at which said board could obtain performance of said work. (3) That no payments became due to the plaintiffs under their contract. (4) That the superintendent of school buildings, acting upon information and evidence, determined said questions of neglect and nonperformance adversely to the plaintiffs, and such determination was reasonable and proper under the contract.

As matter of law, the court decides:

1. That the decision of the superintendent, he having been selected by both parties as the final arbiter, is conclusive, there being no evidence of fraud or misconduct on his part. Smith v. City of New York, 12 App. Div. 391, 42 N. Y. Supp. 522; Quinn v. City of New York, 16 App. Div. 408, 45 N. Y. Supp. 7; Perkins v. Giles, 50 N. Y. 228; Sweet v. Morrison, 116 N. Y. 19, 22 N. E. 276; and kindred cases. The case of Connecticut Val. Granite & Mining Co. v. Trustees of New York and Brooklyn Bridge, 32 App. Div. 83, 52 N. Y. Supp. 667, cited by the plaintiffs, rests upon its own peculiarities, and does not militate against the rule stated. The superintendent, in this instance, acted on evidence upon which he based his judgment. In that case the conclusion was reached arbitrarily, and without any information warranting the conclusion of the engineer, whose judgment was pleaded in bar, and the jury so found. Here the reverse is the fact. There was also a question of waiver in that case, that does not appear in this controversy.

2. That the defendants are not only entitled to judgment dismissing the complaint upon the merits, but to recover from the plaintiffs by way of counterclaim, the sum of $31,528; being the damage occasioned to the defendants by such nonperformance aforesaid, and the natural, direct, and immediate result of the breach.